# UNION CITY & OBION COUNTY BAR ASS'N et al. v. WADDELL et al.—205 S. W. (2d) 573.

Western Section.  May 30, 1947.

Petition for Certiorari denied by Supreme Court, October 3, 1947.

264

Heathcock & Elam, of Union City, for appellants.

J. L. Fry, of Union City, and George C. Rowlett, of Martin, for appellees.

BAPTIST, J. The parties will be referred to as in the Chancery Court.

The bill was filed by the complainants, the Union City and Obion County Bar Association and individual members of that Association against the defendants, Lorene Waddell and Gertrude Waddell Naylor alleging as follows:

"That the Union City and Obion County Bar Association is a general welfare corporation, organized and existing under the laws of Tennessee, for the general purpose of promoting the administration of justice, upholding the honor of the profession of law, maintaining the high standards and traditions of the Bar, establishing a code of ethics for the practice of law, requiring all members of the Bar to conduct themselves in accordance with the law and take all steps for the accomplishment of these general purposes. That the complainants, Tom Elam, Fenner Heathcock, George Cloys, W. M. Miles, C. W. Miles, III, W. E. Hudgins, John W. Hart, Robert

D. Fry, David G. Caldwell, J. Paul White, Charles B. Fields, E. H. Lannom and Obion County Bar Association and licensed attorneys of the State of Tennessee.

"That the defendant Lorene Waddell is now maintaining and has maintained for a number of years in the town of Union City, Obion County, Tennessee, an office purporting to be an insurance and real estate office, and that the defendant, Gertrude Waddell Naylor, her sister is an agent of the defendant, Lorene Waddell acting under the general supervision and control of the said defendant, Lorene Waddell. Your complainants would respectfully show to the Court that in truth and fact this office is not an insurance and real estate office, and that the insurance and real estate business is simply a side-line of the defendants. Complainants aver that the real business conducted by the defendants in this office in Union City, Tennessee, is the illegal practice of law. That the defendant, Lorene Waddell, for the past twenty years, and her sister Gertrude Waddell Naylor for the past few years, have been engaged in the illegal practice of law in that they have been drawing deeds of conveyances, deeds of trust, rental contracts, contracts of various characters and kinds, timber sales, timber purchases, wills, chattel mortgages and various other forms of legal documents, preparing and giving legal opinions as to the status of the title of real estate, the existence of liens and giving general legal advice and counsel, all for a valuable consideration. That she holds herself out as a competitor of the local attorneys in Union City, Tennessee, and has publicly boasted that she is engaged in the illegal practice of law and has more clients than she is able to serve.

"Complainants further aver that the defendants, who are not learned in the law, and are not licensed attorneys

of the State of Tennessee or of any other State, have drawn numerous deeds, mortgages, wills and contracts involving real and personal property, and have rendered opinions on the title to hundred of thousands of dollars worth of real estate in Obion County, Tennessee.

"Complainants aver and charge that the defendants, Lorene Waddell and Gertrude Waddell Naylor have violated Section 7116.1 of Williams Code of Tennessee, in that they have advised and counselled numerous persons, firms, associations and corporations, for a valuable consideration as to secular law, and that they have drawn, procured to be drawn and assisted in the drawing of for a valuable consideration, various papers, documents, and instruments affecting and relating to secular rights; and have done other acts for a valuable consideration in a representative capacity obtaining or tending to secure for various persons, firms, associations or corporations property or property rights.

"Complainants aver that the illegal practice of the defendants has grown to the extent that it now constitutes a public nuisance, by which the complainants are very much aggrieved. That the practice of law by these defendants has lowered, and will continue to lower, if further permitted, the dignity and standards of the legal profession, to whom is exclusively intrusted the privilege of protecting the liberties and property rights of the citizens, both in Court and out, and, therefor, it is essential that all persons performing these functions and duties, and assuming these responsbilites should should be properly qualified and prepared.

"That these defendants do not have the lawful right to practice law, which is not a natural right, but is a privilege or franchise subject to the control of the legis-

lature, and is limited, and of necessity must and should be limited, to persons possessed of and endowed with special qualifications ascertained in the manner prescribed by law."

The prayer was for an injunction to restrain and prohibit the defendants from committing those acts which the bill alleges to be illegal practice of law. An injunction was issued in accordance with the prayer.

The defendants filed answer in which they deny that they have ever engaged in the illegal practice of law in any manner as alleged in the bill, or violated Sec. 7116.1 of the Code.

The answer contains this statement, "Defendants state that due to the nature of this suit and the fact that all local attorneys are members of the Obion County Bar Association, they have been unable to obtain counsel; that they are advised they have a right to represent themselves in court and are forced to file their own answer to this lawsuit; that they expect to obtain a counsel before going to trial."

The record shows that the defendants were represented by able and distinguished counsel both in the Chancery and in this Court.

The defendants demanded a jury.

The only issue submitted to the jury was: "Has the defendant Lorene Waddell, since February 4, 1935, drawn any deed of trust, deed of conveyance, chattel mortgage, will, rental contract, or contract of any kind and/or given her opinion as to the status of title of real estate for a valuable consideration?"

On this issue the jury answered: "No."

No issue was submitted as to the defendant Mrs. Naylor in detail to the various allegations of the bill and there is no appeal as to her.

At the conclusion of all the evidence the complainants moved the Court to withdraw the issues from the jury because under the defendant's own statement she admitted to a state of facts that leaves nothing but a question of law—whether or not it constituted the practise of law.

This motion was overruled.

After the verdict of the jury the complainants moved the Court for a decree in their favor against the defendant, Lorene Waddell, the verdict of the jury notwithstanding.

This motion was overruled and a decree entered dismissing the bill and dissolving the injunction.

The complainants' motion for a new trial was overruled from which action the complainants have appealed to this Court and assigned errors.

The assignments contend that there is no material evidence to support the finding of the jury and that the Chancellor was in error in not withdrawing the issues from the jury, because there was no controversy as to any material fact.

Eight witnesses testified for the complainant.

E. A. Craddock testified that the defendant, Lorene Waddell, had prepared for him a number of deeds; that he had recently a subdivision of lots and had occasion to execute many deeds; that he didn't remember all of them, but that the defendant wrote part of them, especially in connection with the subdivision; that the defendant didn't charge anything for writing the deeds, but that he paid her $1.00 for the acknowledgements; that he had gotten the defendant to write deeds of trust; that she didn't charge anything; that the defendant handled some real estate for him and he paid her a commission

of five per cent for that and she didn't charge anything for the deeds of trust.

A. F. Tittsworth testified that he was engaged in the real estate business with his office near the office of the defendant in the same building; that in his business he had prepared most of the deeds in his own office; that on some occasions he had the defendant, Miss Waddell, to prepare them; that shortly after his office was opened he found it necessary to contact Miss Waddell to prepare contracts and that she said there was no fee for preparing the deed, but there would be a fee for acknowledging it; that he didn't think in any case the fee was above $1; that if the amount was above this it was for abstracting.

"Q. Would she give you an opinion as to the title, whether it was good or bad? A. That's right.

"Q. Were they oral or written? A. I think perhaps they were oral. There could have been some written opinions.

"Q. Where she checked the titles and gave an opinion as to the title, in some cases, she got even more than $5.00 didn't she, Arthur? A. I don't remember, Mr. Hudgins, $2.50 seem to me was her fee. I believe one record involved did run to $5.00, but my mind is not clear on that." ,

Later in his testimony, the witness stated: "We never did call on Miss Lorene as to whether the title was good or bad. The question was never brought up. What we were interested in was to know whether any mortgages or taxes were not satisfied, that is all I know that Miss Lorene looked up."

E. T. Mitchell testified that he was a partner of A. F. Tittsworth in the real estate business; that the defendant, Miss Waddell, prepared during the preceding two

years a number of deeds for his real estate firm; that she received a fee of $1 in such case, but she did not claim to charge anything for the deed, that was the Notary fee; that if she prepared a deed of trust she received as additional compensation $2.50; that for running the title she received $2.50:

"Q. Does she pass upon what parties are necessary in the executing of a deed to make a good title? A. Yes.

"Q. Does she pass upon the question of whether the title is a life estate or a fee simple title? A. Yes.

"Q. Does she or not, pass upon the question of whether there are any mortgages or liens against the property? A. Yes.

"Q. Does she pass upon the question of whether the property is free of any taxes? A. Yes.

"Q. Would she pass upon the question of whether or not the descriptions were good or sufficient descriptions? A. Yes, she passed upon the description in the deed."

J. Walker Kerr testified that he was president of the Old & Third National Bank of Union City; a consolidation of two banks in 1942; that during the time he had been connected with these two banks the defendant Miss Waddell, in connection with loans made by the banks, prepared mortgages and gave opinions on titles; that during the last five years Miss Waddell handled on an average, the transactions of this sort, of forty or fifty a year.

"Q. Now in the case of these loans, I wish you would state again what her work consisted of. A. She would prepare the mortgage and check the records and give us an opinion on the title.

"Q. Would any charge be made by Miss Waddell for this work? A. Yes.

"Q. How much? A. Well, frequently, when she would do this work she would ask us to withhold it from the amount we were paying to the borrower, and for preparing the deed and the acknowledgement and the opinion it was about $2.50.

"Q. Did it ever run more? A. I think probably it did when she had extra work to do.

"Q. What would you say was the maximum charge in these cases? A. I don't recall any that ran—around $5.00 maybe."

The witness testified that occasionally Miss Waddell prepared a written release of a mortgage for which she charged $1 for the release and acknowledgment.

Hunter Elam testified that he was formerly vice-president of the Third National Bank and now vice-president of the Old & Third National Bank:

"Q. In your connection with the two banking institutions, have you had occasion to call upon Miss Lorene Waddell for any services of any sort of a legal nature? A. Yes, sir.

"Q. Was that in connection with both banks or only one? A. Both.

"Q. What sort of services did she perform? A. She would write up mortgages and render opinions.

"Q. Opinions on what? A. On the loans that were made covered by this mortgage.

"Q. Did those opinions have anything to do with the title of the property embraced in the mortgage? A. It was supposed to.

"Q. In other words, they were opinions on the title of securities embraced in the mortgage? A. That's right.

"Q. Was it the same character of services rendered for both banks? A. Yes, sir.

"Q. Over what period of time? A. The last ten years.

"Q. I hand you five instruments described as reports on title filed as Exhibit I to the deposition of J. Walker Kerr, and ask you to examine them and see whether or not similar opinions were issued by Miss Waddell in connection with each loan where her services were employed? A. Yes, sir.

"Q. Would any charge be made by Miss Waddell for these services? A. Yes, sir.

"Q. What did this charge amount to? A. Oh, that would run anywhere from $2.50 to $5.00, depending on the amount of work that had to be done.

"Q. Who would pay her for these charges? A. We would collect for them from the borrower.

"Q. Would you ever pay her directly for the services which was charged back to the borrower? A. I don't recall whether the bank paid any charge directly. They might have sometime on some matters they had looked up probably tax records or something like that.

"Q. I mean in case of an ordinary loan where the charge would be charged back to the account of the borrower or deducted from the loan, would you ever make those payments to Miss Waddell? A. Yes, we paid her a fee on it and charged it against the borrower or deducted it from his loan.

"Q. Back when you were with the Third National Bank, how many times a year would you say, on the average, such services were rendered by. Miss Lorene? A. I would say from fifty to seventy-five.

"Q. Since the consolidation of the banks, how often did she render such services on the average per year? A. I suppose something about the same.

"Q. Have you ever hired Miss Lorene Waddell to do any legal work for you individually? A. Yes, sir.

"Q. Of what nature? A. Drawing deeds or mortgages.

"Q. In those cases, would any charge be made by her for her services, if so, what charge would be made. A. From $2.50 to $3.00.

"Q. How often in the past five years would you say you called upon her for work of this sort? A. Personally, not very many times."

Harry McQueen testified that Miss Waddell in the last twelve years had prepared for him deeds, mortgages, contracts or other instruments of that nature; that in no instance had she made a charge for writing them, but in each instance she had charged $1 as notary fee.

J. T. Vincent testified that within the last few years Miss Waddell had drawn four deeds for him and that in each instance she told him she made no charge for drawing the deed, but that he paid her $1 as notary fee.

Herman Scates testified that in the last two or three years Miss Waddell wrote approximately four deeds for him; that in each instance she made no charge for drawing the instrument but he paid $1 for the acknowledgment.

The defendant Lorene Waddell testified that she had been a Notary Public for more than 25 years; that as Notary Public she kept a probate book in which she entered deeds and trust deeds; that she made a charge of $1 for taking acknowledgments, the entry and the certificate; that in writing deeds and trust deeds she used forms which she secured at the Register's Office; that she had never written a deed out, but just filled in the blanks; that she had never charged any one for the preparation

of an instrument of any kind, but only for the acknowledgment and entering the instrument in her probate book; that she has kept such book since 1935 on the advice of Tom Morris, attorney; that she made abstracts of title to property and checked to see whether there were any outstanding mortgages or unpaid taxes; that she had never given an opinion to anyone as to whether the title to real estate was good or bad; that in connection with the work she did for the Old & Third National she made reports on titles in connection with loans in which reports she stated: "I find no defect in the title to this property"; that her usual charge was $2.50 per loan; that the charge was for taking the acknowledgment, checking taxes and trust deeds; that she had written contracts, sales agreements, wills, deeds and trust deeds as a matter of accommodation, making no charge unless she took an acknowledgment in which case she charged $1; that she served over 4000 people a year.

There was introduced in evidence as exhibits to the testimony of J. Walker Kerr five instruments, each entitled "report on title". These exhibits are admitted by Miss Waddell to have been prepared by her.

All of the instruments are to the same effect and we incorporate one of them as illustrating their character.

"Report On Title

"I have examined the title to a lot of land, located in the 12th Civil District of Obion County, Tennessee, in the corporate limits of Union City, Tenn., and find title to same vested in Virginia T. Holloway, Henry H. Fagan and wife, Virginia H. Fagan by deed from Mrs. T. S. McSchooler, dated September 1st, 1944, recorded in Deed Book 12-B page 566 office of the Register of Obion County, Tennessee, subject to the following liens:

"1. A deed of trust, dated September 1st, 1944, recorded in Deed Book 19-S, page 101, office of the Register of Obion County, Tennessee, executed by Henry H. Fagan and wife, Martha H. Fagan, Virginia T. Holloway and husband, D. F. Holloway, to J. Walker Kerr, Trustee, securing the payment of Seventy (70) notes of $50.00 each, all dated Sept. 1, 1944, due monthly on the 1st day of each month beginning October 1st, 1944, payable to the order of Hugh Lumsden and Hazel Lumsden, with interest from date at 6% per annum until paid, default in payment of any note or interest maturing the entire debt at option of the legal holder and owner of said notes.

"I find no defects in the title to this property and no further encumbrance upon same.

"State and county taxes for 1944 and all prior years paid.

"Corporation taxes for 1944 and all prior years paid.

"Dated at Union City, Tenn, this March 20th, 1945.

"Lorene Waddell

"Lorene Waddell Abstractor."

The so-called probate book kept by the defendant Lorene Waddell is introduced in evidence. It is a book prepared by Scottish Union & National Insurance Company for the registration of insurance policies. In it is entered the character of the instrument, whether deed or trust deed, the parties to the same, the consideration, the dates and in each instance, at the end of the line is entered $1.

On the fly leaf is written: "Lorene Waddell, Notary Public, P. O. Box, No. 24, Union City, Tennessee. Record of acknowledgments taken and entered on probate book."

■ The defendant contends that this book is kept in accordance with Code, Sec. 10715, which is as follows: "Fees of Notary."

"For recording, in a well bound book, to be kept by him for that purpose, each attestation, protestation, and other instrument of publication ...............$1.00."

This section does not authorize the probate of deeds or trust deeds, but has reference only to attestation and protestation of commercial or negotiable instruments.

■ The entries made by the defendant in the so-called probate book are not authorized or required by the Code section, and have no effect so far as the instrument is concerned, and is nothing more than a private record kept by the defendant.

■ Thus it appears, from the defendants own testimony, that for each instrument drawn by her where she took an acknowledgment she received $1, whereas the legal fee for such acknowledgment is 25 cents.

The defendant contended that even if an overcharge was made the overcharge is not practising law, but that she is only liable for an excess fee as Notary Public.

This contention is wholly without merit and is an attempted evasion of the statute which provides that the law business is the drawing for a valuable consideration of any instrument affecting secular rights.

The defendant is not permitted to commit an act in contravention of the statute and be excused on her claim that she received a valuable consideration not for drawing or assisting in drawing an instrument, but as an illegal charge for an acknowledgment.

Code, Sec. 7116.1 provides: "The 'practice of law' is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of

papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies. The 'law business' is hereby defined to be and is the advising or counseling for a valuable considerations of any person, firm, association, or corporation, as to any secular law, or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights, or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.''

■ The purpose of this Act as stated by Justice Chambliss in Haverty Furniture Co. v. Foust, 174 Tenn. 203, 124 S. W. (2d) 694, 698, is ''to prevent the public from being preyed upon by those who for a valuable consideration seek to perform services which require skill, training and character, without adequate qualifications.''

■ There is but one test of adequate qualifications, which is defined in Section 7116.2 of the Act, which forbids any person to engage in the ''practice of law'' or do ''law business'', unless such person shall have been duly licensed therefor.

In State ex rel. v. Credit Men's Ass'n, 163 Tenn. 450, 43 S. W. (2d) 918, 921, Chief Justice Green quotes from an opinion of the New York Court of Appeals, In re Co-operative Law Co., 198 N. Y. 479, 92 N. E. 15, 32 L. R. A., N. S., 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879, as follows: ''The practice of law is not a business open

to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts.''

In the above-cited case the Chancellor held that the defendant was practicing law in its reports as to title of real estate.

Justice Green in passing on that question says:

''The fourth assignment of error complains of the action of the chancellor in holding that defendant was practicing law in making reports to its members as to the title of real estate.

''It seems to us that this assignment of error is well made. As heretofore noted, the defendant would report to its customers on the status of the title and would certify that 'within the scope of our investigation, except for the encumbrances shown above, property appears clear, free and unencumbered.' We agree with counsel that this merely amounts to a certificate that, except as noted, there is no lien of record against the particular

property. The defendant does not undertake to say the title is good. It does not advise as to the nature of defendant's title, or as to the validity of liens, if any exist.

"The certificate is not such an opinion as a lawyer's would be on a title, but is a certificate similar to that commonly furnished by an abstracter, and the business of making abstracts by corporations has been too long recognized to be questioned at this time."

In the instant case the defendant, Miss Waddell, in what she calls a report on title does not state that from her investigation the property appears unencumbered. She certifies that she has examined the title to the real estate involved and finds the title vested in a certain person and that there are no defects in the title to the property.

This is an opinion as to the validity of the title in question and comes within the prohibition of the Statute, if such service is rendered for a valuable consideration.

Her contention is that the compensation received by her for such reports was for abstract work and checking the title; that the report was incidental and no charge made for it.

This again is an attempted evasion of the Statute, and comes within its prohibition.

There is no conflict between the testimony of the witnesses for the complainants and the testimony of the defendants as to the material facts.

There is no question but that the defendant has drawn many deeds, trust deeds and other legal instruments for which she has received valuable considerations.

There is no question but that for a period of years she has done title work for local banks and rendered legal

opinions on the titles for which she received valuable considerations.

Therefore, there was no dispute between the parties respecting the determinative question of fact and the issues should have been withdrawn from the jury.

In De Rossett Hat Co. v. Fire Ins. Co., 134 Tenn. 199, 183 S. W. 720, 722, the court said: ''It is only 'to try and determine any material fact in dispute' that 'either party to a suit in chancery is entitled upon application to a jury'. See section 6282, Shan. Code. Where no material fact is in dispute, the right to a jury trial under that section does not exist, and when a court, in a cause where a jury trial has been applied for under that section and granted, submits to the jury an issue of fact not in dispute, it abdicates its own duty to adjudicate between the parties in respect of that undisputed fact, and when it thus surrenders its functions to the jury it goes beyond the law and is in error . . .''

We find and hold that under the undisputed facts the defendant Lorene Waddell is engaged in an illegal law business as defined in, and in violation of Code, Section 7116.1.

The motion of the complainants for a decree in their favor, the verdict of the jury notwithstanding, should have been allowed.

It results that the decree of the Chancery Court is reversed and the injunction issued in the cause and dismissed at the hearing is reinstated. The cause is remanded to the Chancery Court for proceedings in accordance with this opinion. The defendant will pay the cost.

Anderson, P. J., and Hamner, J., concur.