299 So.2d 289

**LAND TITLE COMPANY OF ALABAMA,**
**an Alabama corporation**

v.

**STATE of Alabama ex rel. Irvine C.**
**PORTER et al.**

**SC 566.**

Supreme Court of Alabama.

Aug. 8, 1974.

Rehearing Denied Sept. 12, 1974.

Spain, Gillon, Riley, Tate & Ansley and S. R. Starnes and Ollie L. Blan, Jr., Birmingham, for appellant.

William H. Morrow, Jr., Montgomery, for appellee.

William M. Acker, Jr., Birmingham, for Lawyers Title Ins. Corp., Douglas P. Corretti, Birmingham, for American Title Ins. Co., James M. Tingle, Birmingham, for Louisville Title Ins. Co. and Alabama Title Company, Inc., Shuford B. Smyer, Birmingham, for Miss. Valley Title Ins. Co. and Jefferson Land Title Services, Inc., and Minnesota Title Insurance Co., amici curiae.

HARWOOD, Justice.

On 8 June 1971, the State of Alabama on the relation of Irvine C. Porter, as Chairman of the Unauthorized Practice of Law Committee of the Alabama State Bar, and Irvine C. Porter, individually, filed a petition for a Writ of Quo Warranto and Bond for Costs in the Circuit Court of Blount County, Alabama.

The petition asserted that in five instances the defendant, Land Title Company of Alabama, an Alabama Corporation, had intruded into the practice of law in that for a consideration it advised others as to secular law. The petition further asserts that in the five mentioned instances the defendant made an examination of the public records of Blount County affecting the title to certain real property located therein. (Descriptions of the five parcels of land are separately set forth.)

The petition asserts that based upon such examination, and acting through lay personnel, who were not licensed to practice law in Alabama, the defendant rendered an opinion of title as to the respectively described real properties. In each form the "Commitment for Title Insurance" designated as the proposed insured State National Bank of Oneonta, Alabama. The petition asserts that the "Commitment for Title Insurance" in each instance contained among other things the following language:

"The estate or interest in the land described or referred to in this Commitment and covered herein is a fee simple, and title thereto is at the effective date hereof vested in: * * *" (Here the owners are named.)

The petition then continues:

"The 'Commitment for Title Insurance' delineated certain exceptions and incumbrances affecting the 'fee simple' title to real property. A copy of the 'Commitment for Title Insurance' is attached hereto and made a part hereof as Exhibit 'A.'

"The defendant thus rendered an opinion of title as to the real property described therein to the proposed lender, State National Bank, Oneonta, Alabama, and, on, to-wit: [date specified], and in reliance upon this opinion of title, the lender made a loan to [certain named party or parties] in the sum of [amount specified] secured by a mortgage on the real property as to which the defendant had rendered the above described opinion of title. The defendant made a charge for examining the public records of Blount County, Alabama, and rendering an opinion of title which charge was in excess of and in addition to the premium for issuance of a policy of title insurance."

The petition prayed that the defendant, Land Title Company of Alabama, be excluded from the practice of law by order of the court, and be enjoined from further

engaging in any acts which constitute the practice of law.

The defendant filed a Plea in Abatement based upon venue and jurisdiction, and the plaintiff's demurrer to this plea was sustained. The defendant then filed a demurrer to the petition, which was overruled. Pleas and answers were then filed by the defendant asserting that the acts charged to the defendant were permitted by Section 42, Title 46, Code of Alabama, Recompiled 1958, and did not constitute an unauthorized practice of law.

A motion for judgment on the pleading was then filed by the plaintiffs and was later amended. The defendant filed an answer to this motion attaching as exhibits affidavits of two of its officers, William F. Miller and John C. Miller, President and Executive Vice President respectively of the defendant company.

Mr. William F. Miller's affidavit was to the effect that he was familiar with the Commitments named in the petition, and the circumstances surrounding their issuance; that the defendant was requested by the owners of the property described in each Commitment to issue title insurance in connection with the sale of the property; that all information was received from said owners; that based on a review of the records of Blount County, decision was made to issue the respective Commitments to insure the various properties, provided certain conditions and requirements were complied with; the Commitments with invoices therefor were sent to the different owners, and at no time were any Commitments sent to the State National Bank nor were any charges made to the Bank; the Commitments were issued as preliminaries to the issuance of policies of title insurance, and were not intended to be used as opinions of title, and were not, to Mr. Miller's knowledge, relied on by State National Bank as such. The Commitments were on standard forms approved by the American Land Title Association and were used by

most, if not all, title insurance companies in Alabama.

The affidavit of Mr. John C. Miller as Executive Vice President of the defendant company, is largely to the same effect as that of William F. Miller.

On 21 August 1973, the plaintiffs filed an affidavit of H. G. NeSmith, Vice President of State National Bank. This affidavit set forth the loans made to the respective owners, and concluded that the Bank relied upon the statement that the proposed borrowers were vested with a fee simple title, and but for this representation by Land Title Company, State National Bank would not have made the loan and accepted as security therefor a mortgage on the real property described in the "Commitment for Title Insurance."

The case came on for a pre-trial hearing before Hon. L. P. Waid, Judge of the Circuit Court of Blount County, on 23 August 1973. At that time the defendant moved for a continuance to obtain other affidavits or depositions to oppose the affidavit of NeSmith, filed by the plaintiffs. The court refused this motion and stated it was going to grant judgment in favor of the plaintiffs. Thereupon the defendant filed a motion for reconsideration, a motion to set a new pre-trial conference date, and a motion to strike NeSmith's affidavit. Each motion was supported by affidavits of defendant's attorney. These motions were denied by the court on 23 August 1973.

On 19 September 1973, the court entered summary judgment finding that the defendant had unlawfully intruded into the practice of law, and ordered the defendant to cease and desist from performing all of the acts set forth and charged in the Petition for Quo Warranto.

The defendant has perfected its appeal from this decree.

There was no oral hearing involved in this cause, it being considered by the court

on the pleadings, and the affidavits submitted.

A number of points are argued in brief of appellant as constituting error in the court's decree, among these being the court's finding that language of the "Commitment for Title Insurance" constituted an opinion of title; that the court abused its discretion in denying appellant's motions to reconsider, to continue the matter, to set a new pre-trial hearing, and to strike NeSmith's affidavit, and in considering the same as evidence. As to the consideration of NeSmith's affidavit as evidence, it is vigorously argued that this affidavit is faulty in that it is merely a conclusory statement not made on personal knowledge and does not comply with Rule 56(e) of the Alabama Rules of Civil Procedure, thus furnishing no basis for summary judgment. In support of this argument, appellant cites Doza v. American National Ins. Co., (8th Cir.), 314 F.2d 230, and Union Insurance Soc. of Canton, LTD v. William Gluckin & Co., (2nd Cir.), 353 F. 2d 946.

The threshold and primary issue presented is, however, whether the issuance of a "Commitment for Title Insurance" preliminary to the issuance of a policy of title insurance, containing language such as was contained in the Commitment here being considered, constitutes the practice of law.

Originally title insurance companies were regulated by various Acts which for convenience may be found as Article 10, Sections 169–177, entitled "Corporations Issuing Guaranties of Title to Land," Title 10, 1958 Recompiled Code of Alabama. It is interesting to note that under the provisions of Section 169 of said Article 10, it was provided that if from the examination by the Superintendent of Insurance, required to be made every two years, it was found that a title insurance company was engaged in preparing or drawing deeds, conveyances, mortgages, or any document affecting secular rights, unless such company owned a proprietary interest in the property, or if such examination revealed that a company was violating any of the provisions of Section 42, Title 46, Code of Alabama 1940, the Superintendent must certify such finding to the Attorney General who must then bring an action to enjoin such acts by the title insurance company.

It appears that all of Article 10, above mentioned, was repealed by Act No. 407, 1971 Acts of Alabama, p. 1067, effective 1 January 1972.

By Act No. 407, 1971 Acts of Alabama, p. 709, (Alabama Insurance Code) to be found as Title 28A, Sections 1–810, 1973 Cumulative Supplement to 1958 Recompiled Code of Alabama, effective 1 January 1972, all insurance companies including title insurance companies, are brought within the provisions of the Alabama Insurance Code. The only specific references in said Insurance Code to title insurance companies are Sections 94 and 494 of Title 28A.

Section 94 merely defines title insurance in the following terms:

"Title insurance is insurance of owners of property or others having an interest therein, or liens or incumbrances thereon, against loss by incumbrance, or defective titles, or invalidity, or adverse claim to property."

Section 494 of Title 28A reads:

"If from any examination of a title insurer the commissioner finds that the insurer is violating any of the provisions of section 42, Title 46, Code of Alabama 1940, the commissioner shall so certify his findings in writing to the attorney general, and the attorney general shall forthwith bring an action in a court of competent jurisdiction in the state of Alabama to permanently enjoin the commission of such acts by the insurer; and if the insurer violates any of the provisions of such an injunction the attorney general shall forthwith bring an action in such court to revoke the corporate charter of such insurer, if a domestic

corporation. (1923, p. 635; 1949, p. 195, appvd. June 30, 1949; 1971, No. 407, p. 936, § 494, effective Jan. 1, 1972.)"

This is but a re-enactment of Section 169 of repealed Article 10, above mentioned.

Section 42, Title 46, Code of Alabama 1940, found in the Article dealing with the State Bar, provides first that only such persons as are regularly licensed have authority to practice law. It then in subsections (a), (b), (c), and (d), defines certain acts as the practice of law. Subsection (c) reads that whoever "for a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, does any act in a representative capacity in behalf of another tending to obtain or secure for such other the preventing or redress of a wrong or the enforcement or establishment of a right" is the practicing of law by one not licensed to do so and is made a misdemeanor.

It is to be specially noted, however, that Section 42, of Title 46, contains the following exception:

" * * * Nothing in this section shall be construed to prohibit any person, firm or corporation from attending to and caring for his or its own business, claims or demands; nor from preparing abstracts of title, certifying, guaranteeing or insuring titles to property, real or personal, or an interest therein, or a lien or encumbrance thereon, but any such person, firm or corporation engaged in preparing abstracts of title, certifying, guaranteeing or insuring titles to real or personal property are prohibited from preparing or drawing or procuring or assisting in the drawing or preparation of deeds, conveyances, mortgages and any paper, document or instrument affecting or relating to secular rights, which acts are hereby defined to be an act of practicing law, unless such person, firm or corporation shall have a proprietary interest in such property, however, any such person, firm or corporation so engaged in preparing abstracts of title, cer-

tifying, guaranteeing or insuring titles shall be permitted to prepare or draw or procure or assist in the drawing or preparation of simple affidavits or statements of fact to be used by such person, firm or corporation in support of its title policies, to be retained in its files and not to be recorded. * * *"

■ In brief counsel for the appellee argues that since it is clear under our decisions that the inherent and ultimate power over admissions and disbarments of attorneys is vested in the judicial department (Ex parte Flowers, 285 Ala. 191, 230 So.2d 519; Ex parte Newton, 265 Ala. 650, 93 So.2d 164), an enactment by the legislature which attempts to permit unlicensed persons to practice law under the guise of an erroneous definition of what is the practice of law, should be declared unconstitutional as an attempted legislative invasion of a purely judicial function.

We are in accord with the general principle contained in this argument. But the question remains as to whether the activities of the appellant in issuing the commitment as disclosed in the present case amounts to the practice of law independent of any statutory provisions.

We have found no Alabama case dealing with the business of title insurance. Counsel for appellant state in brief that they have found no decisions from other jurisdictions pertaining solely to the legal aspect of the effect of a commitment for title insurance, nor has our research revealed such decisions.

We do not find the cases cited by counsel for appellee apposite for the reason that they involve facts different from the facts shown in the proceedings below. Berk v. State, 225 Ala. 324, 142 So. 832, pertained to the operation of a collection agency. Clearly the defendant engaged in acts involving secular law. Boykin v. Hopkins, 174 Ga. 511, 162 S.E. 796, dealt with the validity of an act authorizing a *corporation* whose stated purpose was to

practice law, excluding court appearances, but including the rendering of opinions as to the validity or invalidity of titles to real or personal property. Darby v. Mississippi State Board of Bar Admissions, (Miss.), 185 So.2d 684, involved a court clerk who prepared deeds and opinions of title which were generally relied on in the community, and on which the local bank based loans. Grievance Committee of Bar of New Haven County v. Payne, 128 Conn. 325, 22 A. 2d 623, involved the actions of a town clerk in issuing opinions and certificates of title upon examination of land records of the Town of Meriden. Hexter also prepared curative documents to clear up defects in the titles he examined. Hulse v. Criger, 363 Mo. 26, 247 S.W.2d 855, related to a real estate broker giving advice or opinions as to real estate titles. Opinions of the Justices, 289 Mass. 607, 194 N.E. 313, was a response to a request from the Senate of Massachusetts concerning legislation to regulate the practice of law. The court set forth in general terms some three categories of conduct as constituting the practice of law, among which the court stated the giving of title opinions constituted the practice of law. This general statement sheds little light on the question now before us. In Union City and Obion County Bar Assn. v. Waddell, et al., 30 Tenn.App. 263, 205 S.W.2d 573, the court had before it a "Report on Title" issued by a title abstractor. Such report was a rather detailed title opinion and the court held that the abstractor was engaged in practicing law. In Steer v. Land Title Guarantee & Trust Co. (Ohio Com.Pl.), 113 N.E.2d 763, a title insurance company was engaged in selling title opinions to the Ohio Turnpike Commission. This was held to be an unauthorized practice of law.

A look at the Commitments which are the basis of these proceedings shows that it is a standard form of the "American Land Title Association Commitment—1966." It also shows that it is entitled "Commitment for Title Insurance." Following such description of the document it is provided that the company, for a valuable consideration, commits itself to issue "a policy of title insurance, as identified in *Schedule A*, in favor of the proposed insured named in Schedule A, *as owner or mortgagee of the estate or interest covered hereby* in the land described or referred to in Schedule A." (Emphasis ours.) It is also set forth that Commitment is preliminary to the issuance of the policy of title insurance.

"Schedule A" appears on page 2 of the Commitment. The name of "Proposed Owner" is left blank. Next, Schedule A indicates a loan of [a stated sum], and under "Proposed Insured" is listed State National Bank.

Under Paragraph 2 of Schedule A appears the statement which is the subject of this controversy, i. e., "The estate or interest in the land described or referred to *in this Commitment and covered herein* is a fee simple, and title thereto is at the effective date hereof vested in * * *." (Here follows the name or names of the party or parties. Emphasis ours.)

Paragraph 3 describes the land.

Schedule B specified the requirements which must be met before the policy of title insurance will issue.

It is well settled that a court in seeking to ascertain the intention of the parties in construing a contract, will consider the contract as a whole, although the immediate object of the inquiry is the meaning of a particular clause. Smith v. Tersheshee, 222 Ala. 108, 130 So. 792. Further, a contract must be construed as a whole and, whenever possible, effect must be given to all its parts. The court will look to all of the provisions and the object to be accomplished. Penn Mutual Life Ins. Co. v. Fiquett, 229 Ala. 203, 155 So. 702; Chapman v. Nitrate Agencies Co., 225 Ala. 650, 144 So. 810.

It is clear that a title insurance company must be allowed to review public records and specify any curative work to

be done before it will issue a policy. State Bar of Arizona v. Arizona Land Title & Trust Co., 90 Ariz. 76, 366 P.2d 1.

The Commitment here being considered, when read in its entirety, merely specifies the estate to be covered in a title policy to be later issued, and specifies the owner of the property as of the date of Commitment. It merely committed the title insurer to insure the title to land to be covered by a mortgage in an amount specified when the mortgage was later executed by the persons listed in the commitment as owners.

This falls far short of a title opinion. A title opinion, as we understand the term, includes an analysis of the recorded instruments as they may affect the claim of title down to a present owner. See Kentucky State Bar Assn. v. First Federal Savings & Loan Assn. of Covington, (Ky.), 342 S. W.2d 397.

■ An attorney in giving a title opinion in effect warrants the title with such conditions or exceptions as he sees fit to express.

■ The Commitment now under consideration, we think from a consideration of the entire instrument, must rationally be construed as a binder to issue a title insurance policy, and not a title opinion. Its purpose was to insure a prospective mortgagee to the amount of the mortgage loan against any defects in the title to the mortgaged property. Such action rested entirely upon "risk" versus the premium charged for such undertaking.

There was no evidence that the appellant had prepared any document deed, conveyance, mortgage document, or instrument relating to secular rights of the parties, although under Section 42, Title 46, the expressed legislative policy is to the effect that a title insurance company is permitted to prepare simple affidavits or statements of fact to support the issuance of its title policies.

In Cooperman v. West Coast Title Co., et al., (Fla.), 75 So.2d 818, the question presented concerned primarily the activities of title insurance companies *after* the issuance of a Commitment to issue a title insurance policy. As to the Commitment, the court, after stating that a title insurance company might advise themselves as to the condition of a title, further held that if the closing of the transaction takes place after a Commitment is made, the title company's agent may complete forms of deeds, mortgages, notes, assignments, and satisfactions, and supervise their execution without being considered as engaging in the practice of law. The court pointed out that there was no definition of the practice of law in Florida. We note here, however, that the practice of law is defined in Section 42, Title 46, of our Code and limitations are therein placed on the activities of title insurers, i. e., that such companies may only prepare simple affidavits and statements of fact to support its policy.

Florida Bar v. McPhee, (Fla.), 195 So. 2d 552, again concerned the activities of title insurance companies. It was urged that the court reconsider its decision in *Cooperman*, supra. The court stated it had reconsidered *Cooperman*, and the scope thereof and found no reason to disturb the decision in that case.

We hold that the activities of the appellant as disclosed by the evidence presented below did not constitute an intrusion into the practice of law. The decree is therefore due to be reversed.

This conclusion is dispositive of this appeal. No need therefore arises to discuss the other points alleged by the appellant as constituting reversible error.

Reversed and remanded.

MERRILL, COLEMAN, BLOODWORTH, MADDOX and McCALL, JJ., concur.

HEFLIN, C. J., and FAULKNER and JONES, JJ., concur specially.

HEFLIN, Chief Justice (concurring specially):

While I am in general agreement with the opinion of Justice Harwood as it relates to title binders or commitments for title insurance, I feel that the case should be reversed for another reason. This case was disposed of by a summary judgment. Such disposition was erroneous in my opinion for the reasons herein set forth.

Litigation in the trial court was instituted, and a statement of the case is as follows: the case was commenced on June 8, 1971; a plea in abatement filed on July 7, 1971; a demurrer to the plea in abatement filed on July 7, 1971; a demurrer to the plea in abatement filed on July 30, 1971, and sustained on September 23, 1971; a demurrer to the complaint filed on October 15, 1971 and overruled on October 14, 1972; pleas and answer filed November 14, 1972; motion for judgment on the pleadings filed by plaintiff July 5 and amended July 6, 1973; response to the motion with supporting affidavits by defendant filed on August 10, 1973; affidavit filed by plaintiff on August 21; pre-trial conference on August 23, summary judgment orally granted at the pre-trial conference, to which defendant filed (1) motion to reconsider adverse rulings to the Defendant of the Court at the pre-trial conference; (2) motion pursuant to ARCP Rule 56(e); (3) motion to set new pre-trial conference; and (4) motion to strike plaintiff's affidavit filed on August 25, 1973; and entry of Summary Judgment of Ouster on September 19, 1973.

It is clear from these procedural steps that the trial court and the litigants followed the general principle that the Alabama Rules of Civil Procedure govern any procedural aspects of the case which transpired after July 3, 1973. See ARCP Rule 86. In fact, the plaintiff utilized one of the provisions of the new rules only two days after the new rules went into effect by filing a motion for judgment on pleadings on July 5, 1973. See ARCP Rule 12(c). The defendant responded to this motion by serving two affidavits in opposition to the motion on August 10; the plaintiff then served an affidavit in support of his motion on August 21.

The trial court had set a pre-trial conference for August 22. During this conference the trial court took up the pending motion for judgment on the pleadings, converted it into a motion for summary judgment by virtue of the affidavits filed in support of and against the original motion and ruled in favor of the plaintiff. See ARCP Rule 56.

It is from this ruling that the defendants bring this appeal.

Summary judgment is a procedure which has become available to litigants in our state with the advent of the Alabama Rules of Civil Procedure. See ARCP Rule 56. Correctly utilized, this procedure is a proper vehicle for the expeditious determination of certain litigation. This procedure is available in litigation where the facts reveal "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ARCP Rule 56(c).

The framework within which the summary judgment operates is subject to several general rules, including the following: first, the movant on a motion for summary judgment has the burden of proof "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," ARCP Rule 56(c), see 10 Wright and Miller, Federal Practice and Procedure, § 2727 and 6 Moore's Federal Practice ¶ 56.15[3]; and second, all inferences are drawn in favor of the nonmoving party, see Wright and Miller, Id., and Moore, Id.

Because of these general guidelines, it is important to establish who the moving party was on the summary judgment proceed-

ing in the case under review. In fact, the briefs raise this precise question. The trial court concluded the plaintiff was the movant on the motion for summary judgment. I agree. Recalling that neither party formally moved for a motion for summary judgment but rather the summary judgment proceeding occurred because of a conversion of the plaintiff's motion for judgment on the pleadings (ARCP Rule 12(c) ), it is helpful to review the procedural steps which lead up to the granting of the summary judgment. The plaintiff served a motion for judgment on the pleadings; the defendant responded by serving two affidavits to which the plaintiff responded with one affidavit. ARCP Rule 12(c) provides that a motion for judgment on the pleadings shall be treated as a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the trial court.

1 envision two factual contexts from which a Rule 12(c) motion would be converted into a Rule 56 motion for summary judgment. The first is where the parties seeking the Rule 12(c) motion supports this motion for judgment on the pleadings with matters outside the pleadings. In this instance, the party moving for the initial motion is responsible for the conversion of the motion into a motion for summary judgment. Clearly, this party is movant on the first motion and movant on the second motion. The second situation is where one party moves for the Rule 12(c) motion and the opposing party is responsible for the conversion of the motion by interposing matters outside the records. This second factual context fits the facts of this appeal. Resolution of who the movant is on the converted motion presents the harder context for analysis.

While I have not found nor have the parties pointed to any cases in point in any jurisdiction, the conclusion that the movant on the original Rule 12(c) motion should remain the movant on the converted motion for summary judgment is the most

tenable answer. A fair reading of the conversion aspect of Rule 12(c) indicates that only the name of the motion is to be changed by the introduction of matter outside the pleadings. Moreover, the party moving for the Rule 12(c) motion is seeking a judgment in his favor. As such, he assumes the burden of showing that he is entitled to the judgment. To keep such a burden on the movant for the initial motion should cause no surprise nor undue hardship.

Thus, a threshold question presented on this appeal is whether the plaintiff has met the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c).

One of the issues Land Title raises in this appeal is whether the affidavit filed by plaintiff in support of the motion complies with the requirements of Rule 56(e) that the affidavit be made on personal knowledge and that the affidvait shall set forth facts as would be admissible in evidence.

The affidavit in question was made by H. G. NeSmith, vice-President of State National Bank, Oneonta, Alabama. It consists of five paragraphs each of which purports to describe a mortgage transaction the bank entered into with prospective buyers of property which Land Title had issued commitments of title insurance. Each paragraph uses precisely the same words with variations for the names of the mortgagees, the amount of the loan and the dates of the transactions. For brevity, only one of these paragraphs is set out as illustrative of the rest of the affidavit:

"That State National Bank, Oneonta, Alabama, heretofore made a loan to Anthony B. DeCicco, Jr., and Patricia DeCicco in the sum of $21,000.00 secured by a mortgage on certain real property located in Blount County, Alabama. That Land Title Company of Alabama,

an Alabama corporation, issued an instrument described as 'Commitment for Title Insurance,' dated April 19, 1971. That the 'Commitment for Title Insurance' contained a legal description of the land involved and stated 'The estate or interest in the land described or referred to in this Commitment and covered herein is a fee simple, and title thereto is at the effective date hereof vested in: Anthony B. DeCicco, Jr., and Patricia A. DeCicco.' That State National Bank, Oneonta, Alabama, relied upon the statement that the proposed borrowers Anthony B. DeCicco, Jr., and Patricia DeCicco were vested with a fee simple title, and but for this representation by Land Title Company of Alabama, State National Bank, Oneonta, Alabama, would not have made the loan and accepted as security therefor a mortgage on the real property described in the 'Commitment for Title Insurance.' "

I am of the opinion that the language used above falls short of the requirements set forth in Rule 56(e):

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

An examination of this affidavit convinces us that the appellant's challenge to its sufficiency is valid. Nowhere is there an affirmative statement to show that the affiant is competent to testify to the matters stated herein; nowhere is it simply stated that the affiant handled the transaction on behalf of the bank. There is no positive indication that the statements are made on personal knowledge. The form of this affidavit closely resembles the following description as found in Antonio v. Barnes, 464 F.2d 584, 585 (4th Cir. 1972):

"[T]here is no showing whatever that the statements therein were made on personal knowledge as required by the

Rule. From the fact of the affidavits, they might well be based on mere hearsay or, at best, reflect only a summary of the general routine prescribed for the institution. The absence of an affirmative showing of personal knowledge of specific facts vitiates the sufficiency of the affidavits and accordingly, summary disposition based thereon was improper. Doza v. American National Insurance Company, 314 F.2d 230 (8 Cir. 1963); 3 Barron & Holtzoff, Federal Practice and Procedure § 1237 (Wright ed. 1958). See also Arguelles v. U. S. Bulk Carriers, Inc., 408 F.2d 1065, 1068 (4 Cir. 1969)."

Furthermore, some of the statements are conclusions involving the mental operation of the bank. "It is well established that the affidavits contemplated in Rule 56(e) must be evidentiary in nature and should set forth facts that would be admissible in evidence." Maldonado v. International Business Machines, Inc., 56 F.R.D. 452, 454 (D.C.D.Puerto Rico 1972); see 10 Wright and Miller, supra § 2738 and 6 Moore's Federal Practice, ¶ 56.22 [1].

Title insurance business walks a close and sometimes thin line between what is legal and what constitutes the practice of law. In this case there is the allegation that Land Title Co. of Ala. charged a fee for rendering an opinion of title along with the services of examining the public records of Blount County which charge was in excess and in addition to the premium for the issuance of a policy of title insurance. Since this case is being reversed and remanded, it would appear that a determination of the activities of Land Title Co. of Ala. should be made only after full development of facts in a trial.

JONES, Justice (concurring specially).

In my opinion this is not a proper case for summary judgment. Genuine issues of fact (e. g., the allegation that a fee was charged for the title search and opinion in addition to the insurance premium) are

presented by the pleadings and left unresolved by the affidavits. Counter affidavits should have been allowed and if the factual issues still remain, such issues should be submitted to a jury before judgment is rendered. Therefore, I concur in the result that the case must be reversed and remanded.

I find myself in complete disagreement with the remainder of the holding of the majority opinion. The central thrust of the Court's reasoning is to the effect that the words, "The estate or interest in the land . . . is a fee simple, and title thereto is . . . vested in: * * *", when taken together with the language as a whole appearing in the commitment, do **not** constitute the practice of law; and this for the reason that the overall purpose of the document in which this language appears is to commit the Title Insurance Company to insure the title to certain described property upon certain stated conditions. In other words, the majority opinion concludes that since this expression of opinion as to title is part and parcel of a commitment to insure title, such a title opinion is something less than what the words themselves say it is.

Admittedly, the combination of words used by the Title Insurance Company in this commitment is not in the exact classical order as those traditionally employed by attorneys in rendering title opinions; but it could hardly be argued that, "The interest in the land is a fee simple, and title thereto is vested in * * *", is not the equivalent of, "In my opinion fee simple title in the subject property is vested in * * *." In both instances the words express an opinion as to the legal effect of documents of conveyances and encumbrances relating to real estate.

In my opinion, if the defendant, Land Title Company of Alabama, charges (in addition to its premium) a fee for the issuance of the commitment to insure, and if this commitment contains an expression of opinion as to title, and such expression is not based upon an independent opinion of an attorney duly authorized to practice law in this state, the Title Insurance Company is guilty of unauthorized practice of law. Tantamount to the regulation of the practice of law (as well as the practice of other professions) is the interest of the public and not the self interest of the members of the profession. I am not impressed to a contrary view by the large number of lawyers who appear amicus curiae on behalf of the Title Insurance Company or by their argument (adopted in part by the majority opinion) that this is a long-standing practice which is virtually universally followed by the title insurance industry.

It is beyond the realm of speculation to suppose what position these same lawyers would take if the act complained of as constituting the unauthorized practice of law was the *closing* of the real estate sale instead of the rendering of a title opinion. How it could be argued that the drafting of deeds, mortgages, etc., constitutes the unauthorized practice of law, but that the expression of an opinion as to the legal effect of such documents is not, is beyond the scope of my understanding. Indeed, as between the two, the former seems less offensive as far as the public interest is concerned since these acts are performed ordinarily by the filling in of certain blanks on a printed form, while the legal expertise required for the latter could hardly be relegated to the perfunctory or the routine.

I believe the position taken by the Alabama State Bar, although to the apparent displeasure of a substantial number of lawyers, is on the "side of the angels", and if on retrial of this cause the allegations of its petition are supported by the proof, I would so hold.

FAULKNER, J., concurs.