**John E. GREEN and Cole-Layer-Trumble Company, a Corporation, Plaintiffs-Appellants,**

**v.**

**RUSSELL COUNTY and Charles A. Boswell, Commissioner of Revenue, State of Alabama, Defendants-Appellees.**

**No. 77–2428.**

United States Court of Appeals, Fifth Circuit.

Oct. 1, 1979.

Rehearing and Rehearing En Banc Denied Oct. 29, 1979.

Robert A. Huffaker, Montgomery, Ala., for plaintiffs-appellants.

J. Pelham Ferrell, Phenix City, Ala., Herbert I. Burson, Jr., Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

James W. Webb, Montgomery, Ala., for Russell County.

Philip C. Davis, Asst. Counsel., Ron J. Bowden, Asst. Counsel, Dept. of Revenue, Montgomery, Ala., for Boswell.

Before COLEMAN, RONEY and FAY, Circuit Judges.

PER CURIAM:

This case is one of the progeny sprung from the decision of a three-judge panel in *Weissinger v. Boswell,* 330 F.Supp. 615 (M.D.Ala.1971), which invalidated the Alabama property tax structure and generated a massive reappraisal effort in every county in the State. At issue here is the interpretation of one clause of a contract for the reappraisal of property in Russell County, Alabama.

On April 27, 1973, Russell County, with the approval of the Alabama Department of Revenue, executed a "State of Alabama Uniform Contract Articles of Agreement" with John E. Green for Green to accomplish the reappraisal for that county. Green subcontracted the entire performance to Cole-Layer-Trumble Co. (CLT), a large mass-appraisal firm. In dispute is the proper interpretation of paragraph IC of this agreement, which reads as follows:

### C. STARTING AND COMPLETION DATES

Work on the project shall start no later than 30 days from the date this contract is approved by the commissioner. All appraisals, maps, records, cards, lists of property owners, and other materials required and used in this project, shall be furnished by the contractor, except property records and index cards which will be furnished by the State, and shall remain at all time the property of the county. The contract will not be completed until such time as all work, review and hearings, and corrections have been completed to the satisfaction of the department, including the reconciliation of the county's current property tax returns with the appraisal cards and county maps prepared by the appraisal firm in such a manner as to account for all parcels of

real property in the county, and all records shall have been completed and handed to the assessor; provided, that appraisal of all property under construction and transfers of property prior to 45 days before the completion date stated below will be the responsibility of the company under this contract.

This contract shall be completed not later than the 1st day of March, 1975.

Specifically, the parties disagree upon the appraisers' responsibility to "update" the appraisal, i. e., to make the final work product reflect all new construction and property transfers occurring up to 45 days before the completion date of the appraiser's work.

Another paragraph of the contract imposed liquidated damages of $100 per day for each day that the company exceeded the contract date of completion. Although the interpretation of that provision was debated in the district court, it is not at issue here.

Appellants failed by many months to meet the contract completion date of March 1, 1975. When it became apparent that the work could not be completed by March 1, 1975, Green and representatives of CLT held several meetings with the Russell County Commission seeking an extension of the completion date. On April 2, 1975, the appraisers, meeting with the Commission, requested an extension until January 16, 1976, and a waiver of the liquidated damages of $100 per day. In return they offered to update their work to within 45 days of the extended completion date. Later in April, after the March 15 completion date but before the Commission had acted on the proposed amendment, CLT sought an extension of the 45-day period to 90 days on the grounds that the 45-day period would begin after informal hearings were completed. Accordingly to CLT's General Counsel, CLT's planning schedule called for informal hearings in Russell County between October 27 and November 21, 1975, with all mapping and appraisal to be completed as early as September 12, 1975. Adhering to the 45-day requirement, CLT contended, would require the appraiser to record transfers and improvements after those hearings and would thus require additional hearings. In late April or early May 1975, the Commission denied the appraisers' request for amendment. Green and CLT continued to perform their appraisal work, paying the County liquidated damages of $100 per day. However, they did not do any update work.

In response to a hypothetical question concerning an appraiser's liability for updating, a Revenue Department internal memorandum of January 15, 1975, gave the Department Chief Counsel's opinion that the appraiser was only obligated to update to within 45 days of the completion date stated in the contract, even though the actual completion date was somewhat later. This position was conveyed to the Department's District Supervisors. Nevertheless, according to deposition testimony, the Russell County Commission consistently refused to accept the interpretation made by the Department of Revenue. A subsequent formal opinion issued by the Alabama Attorney General in September 1976 rejected the Revenue Department's view and agreed with the position maintained by Russell County. Faced with the Attorney General's opinion, Green and CLT instituted this declaratory judgment action in the District Court.

The District Court determined that it was the responsibility of Green and CLT, at their expense, to appraise all property under construction and transfers of property prior to 45 days from the completion of their work. Green and CLT appeal this decision, asserting that appellees are estopped to require updating to the actual completion date, that the contract does not require an update to the actual completion date, and that there was no implied contract to perform the update to the actual completion date.

■ This case was tried in the District Court entirely on depositions, affidavits, and documents. Although we have noted that in such a circumstance the burden of establishing clear error is not so heavy as in the normal case, our review of the factual

findings is nevertheless governed by the clearly erroneous standard. *Cooper v. Department of the Navy,* 5 Cir. 1979, 594 F.2d 484, 486; *Petition of Geisser,* 5 Cir. 1977, 554 F.2d 698, 705; *Sicula Oceanica, S. A. v. Wilmar Marine Engineering and Sales Corp.,* 5 Cir. 1969, 413 F.2d 1332, 1333–34. See also *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Fed.R.Civ.P. 52(a). We have likewise observed that where the legal conclusions of the trial judge may reasonably be inferred from the record, "such conclusions should not be disturbed on appeal . . . even though conflicting inferences of equal reasonableness may be drawn from a review of the same body of evidence." *McKensie v. Sea Land Service, Inc.,* 5 Cir. 1977, 551 F.2d 91, 92, *quoting Skidmore v. Grueninger,* 5 Cir. 1975, 506 F.2d 716, 724.

 After carefully reviewing the entire record and applying these considerations to the findings and conclusions of the three-judge panel, we are of the opinion that those findings and conclusions are not clearly erroneous. We note that the Alabama Supreme Court has recently reiterated that state's position that in reviewing contracts, courts are to "accord them a reasonable construction under the terms used by the parties who made them, and when the contracts contain several provisions, all are construed together so that a harmonious operation can be given to each provision as far as the language used will permit." *United States Fidelity & Guaranty Co. v. Jacksonville State University,* 357 So.2d 952, 955 (Ala.1978). Accordingly, we affirm the judgment of the District Court on the basis of the trial court's opinion, the relevant portions of which are attached hereto as an appendix.

AFFIRMED.

## APPENDIX

Green, et al. v. Russell County, et al. (A 76–339–N) (May 31, 1977) (per curiam):

\* \* \* \* \* \*

In support of their estoppel theory, plaintiffs refer to an interpretation of the Uniform Contract issued by the Chief Counsel of the Revenue Department on January 17, 1975, and subsequently circulated and quoted among various contractors and county commissioners throughout Alabama. This interpretation is identical with plaintiffs' contention as to their update responsibilities. An opposite interpretation was subsequently given in an opinion of the Attorney General of Alabama requested by Russell County authorities. We need not decide whether the action of the Revenue Department and its officials could bind Russell County, because we find that plaintiffs have not established detrimental reliance on their part, which is a necessary element of estoppel. Plaintiffs claim to have relied on the interpretation by the Revenue Department in continuing to work after March 1 while paying $100 a day to the county. This, however, is no more than they were contractually required to do if defendants' contentions are correct. Even if it can be said, therefore, that plaintiffs in some sense relied on the Revenue Department interpretation, which was issued long after the contract was formed, they have not done so to their detriment.

Had the disputed clause of paragraph C stated simply that update work was required of the appraisal contractor up to "45 days before the completion date," there could be no controversy over the extent of plaintiffs' obligation. Paragraph C as a whole is manifestly concerned with the actual completion of the appraisal project, and it specifically states that the contract "will not be completed" until all work, including the disputed update work, which is required in the same sentence, has been done. It is merely the two words "stated below" that furnish the predicate for plaintiffs' position. Except for these two words, everything about the update requirement testifies clearly to its inseparable connection with the actual completion of the work. There is nothing in the contract to suggest that March 1, 1975, the date by which "[t]his contract shall be completed," was intended by anyone as an arbitrary limit on plaintiffs' responsibilities, divorced from its

character as the actual completion date. Russell County contracted with care for the furnishing of an up-to-date appraisal of taxable property usable immediately without further appraisal work (except changes arising during the 45-day hiatus) for the purpose of complying with this court's mandate. The construction urged by plaintiffs would defeat that object by an arbitrary and unreasonable restriction:

> Courts, in the interpretation of contracts, seek to ascertain the intention of the parties, and where it is ambiguous and of doubtful meaning, doubt will be resolved against the party preparing and issuing the obligation, yet the construction must be reasonable, not arbitrary, and the court will look to all the provisions and the object to be accomplished.

*Penn Mutual Life Ins. Co. v. Figuett,* 229 Ala. 203, 155 So. 702 (1934). This principle of construction has been recently reaffirmed. *Land Title Co. of Alabama v. State ex rel Porter,* 292 Ala. 691, 299 So.2d 289, 295 (1974).

Consideration of this contract as a whole, and of its object, makes it clear that the parties, in making the appraiser's updating responsibility extend to 45 days before "the completion date stated below," contemplated the actual completion date of the project. Accordingly we find that plaintiffs' obligation under the contract is to furnish data current to within 45 days of the date it actually completes its contracted task.

Even if we accepted the argument of plaintiffs that the "update" provision only refers to 45 days prior to March 1, 1975, the result would not be different. We think that then the provision would have no application to the situation where the contractor fails to finish his work by March 1, 1975. The contractor could not, by his failure to timely perform, lessen his obligation to furnish an ultimate work product complete and current as of the time he turns it over (less 45 days). The breaching contractor could not force the county, by his breach, to ac-cept incomplete and stale data or to pay him extra compensation for making his data complete and fresh. After the plaintiffs failed to timely perform and continued working the parties would be under an implied contract arrangement pursuant to which the contractor would continue to be paid for his work (though untimely done) on the basis originally agreed upon and would continue to be responsible to furnish upon completion an up-to-date work product (less the final 45 days).