[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16188
_____

D. C. Docket No. 2:11-cv-00538-WS-C


MISSISSIPPI VALLEY TITLE INSURANCE COMPANY,
WELLS FARGO BANK, N.A.,
OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,
400 Second Avenue South Minneapolis, MN 55401,

Plaintiffs-Appellees,

versus


J. GARRISON THOMPSON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 29, 2015)

Before TJOFLAT, Circuit Judge, MOORE,[*] and SCHLESINGER,[**] District Judges.

SCHLESINGER, District Judge:

On June 19, 2014, this Court—confronted by a question of first impression under Alabama law, and cognizant of the deference due state courts in our federalist system of dual sovereignty—certified the following question to the Alabama Supreme Court:

> **Is an attorney whom an insurance company hires as an attorney agent providing a "legal service" within the meaning of Ala. Code § 6–5–574 when he performs a title search, forms an unwritten opinion about the status of title, and then acts on that unwritten opinion by issuing a commitment to insure or an insurance policy?**

*See Miss. Valley Title Ins. Co. v. Thompson* (*Miss. Valley I*), 754 F.3d 1330, 1334–35 (11th Cir. 2014).  The Alabama Supreme Court subsequently declined to answer the certified question, "as it had every right to do and has done on occasion before."  *Price v. Time, Inc.*, 416 F.3d 1327, 1334 (11th Cir. 2005).  Yet, this declination leaves the three federal judges on this panel the unenviable task of considering a novel question of state law.

As the Eleventh Circuit has explained, however, a federal court should

---

[*] Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, sitting by designation.

[**] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

2

generally undertake to answer a novel question of state law only when it is necessary to do so. *See, e.g.*, *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) ("Because the only authoritative voice on Alabama law is the Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law."). This facet of cooperative federalism is "especially important" when the state law issue "will affect the rights of . . . many of the state's citizens" and concerns "a subject matter that falls squarely within the zone of traditional state regulatory concerns." *See id.* Accordingly, after reconsideration of the facts and law in this case, we find that it is unnecessary at this juncture to answer the certified question because there exists a genuine dispute of material fact regarding a preliminary (and dispositive) issue: the nature of the parties' relationship.

The record is presently insufficient to determine whether the parties entered into an attorney-client relationship or a principal-agent relationship when Mississippi Valley hired Thompson as an attorney agent. Accordingly, we will not pass on the certified question regarding whether Thompson's conduct does or does not constitute the provision of legal services, because if the parties never entered into an attorney-client relationship, then Thompson's conduct is irrelevant. We therefore remand this case to the district court for further proceedings to resolve the nature of the parties' relationship.

## I. BACKGROUND

### A. FACTS

Thompson is an attorney practicing law in Alabama.  He has been a member of the Alabama State Bar and licensed to practice law in the state since 1963.  In February 2000, Mississippi Valley hired him as an "attorney agent," authorized to perform title searches and to issue title insurance commitments and policies on behalf of Mississippi Valley.  During his tenure, Thompson made two mistakes that form the basis of this action.

In 2001, Richard and Elizabeth Rabb ("the Rabbs") sought to procure a loan from CTX Mortgage Company ("CTX") with respect to the Rabbs' property.[1] Thompson performed a title search on the property, yet he overlooked a prior mortgage on the property that had been recorded in 1997 by Marion Bank & Trust Company ("Marion Bank").  Thompson thereafter failed to except Marion Bank's first mortgage from coverage when he issued a commitment for title insurance and a title insurance policy on the Rabbs' property, thus incorrectly insuring that CTX held the first mortgage lien position.  Then, in 2003, the Rabbs sought to procure an additional loan from Marion Bank.  Thompson again performed a title search on the property; he failed to except the 2001 CTX mortgage from the title insurance

---

[1] Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") is the successor in interest to the CTX mortgage and is the current insured under the 2001 policy.

4

commitment, although the subsequently issued title insurance policy did except that mortgage.

The Rabbs eventually defaulted on their loan payments, and Marion Bank held a preferred position against Wells Fargo.  Based on the faulty 2001 policy, Mississippi Valley was left exposed to payment to Wells Fargo.  This exposure was potentially exacerbated by the faulty 2003 commitment to Marion Bank.

## B.  PROCEDURAL HISTORY

Mississippi Valley brought a diversity suit against Thompson in September 2011 for the mistakes he made in 2001 and 2003.  The lawsuit alleges that Thompson breached the parties' contractual agreement by failing to except the prior mortgages before issuing the title insurance commitments and policies and that, pursuant to the contractual agreement, Thompson agreed to indemnify Mississippi Valley for any loss the company incurred due to his mistakes.

Thompson moved for summary judgment, arguing that he is a legal service provider and provided legal services to Mississippi Valley when he performed title searches, formed unwritten opinions as to the insurability of title, issued commitments to insure, and issued title insurance policies based thereon. Accordingly, Thompson argued that Mississippi Valley's suit was time-barred under the Alabama Legal Services Liability Act ("ALSLA"), Ala. Code § 6–5–570 *et seq.*, which provides a two- or four-year statute of limitations for "legal service

5

liability actions against a legal service provider." *Id.* § 6–5–574(a).[2]

The district court denied his motion and instead granted partial summary judgment to Mississippi Valley on the issue of liability. The district court agreed with Mississippi Valley that under Alabama law Thompson's conduct did not constitute the provision of legal services. Therefore, the less-stringent statute of limitations governing principal-agent relationships set forth in Ala. Code § 6–2–6 applied and did not bar Mississippi Valley's suit. The district court further held that Thompson breached the parties' contractual agreement, giving rise to an indemnity obligation. Thereafter, the banks involved in the lawsuit, Wells Fargo and Marion Bank, entered into a settlement of the underlying claims, and the district court entered judgment against Thompson in the amount of $94,697.20. Thompson then initiated this appeal.

On appeal, Thompson argues that the district court erred in concluding that he did not provide legal services to Mississippi Valley, a conclusion that foreclosed his statute of limitations defense under Ala. Code § 6–5–574. Mississippi Valley counters that the district court correctly rendered judgment in its favor after determining that the suit was not time-barred and Thompson had no other defenses.

---

[2] Pursuant to the *Erie* doctrine, a state's statutes of limitation are substantive in nature and must be applied in a suit based on diversity jurisdiction. *E.g.*, *Dade Cty. v. Rohr Indus., Inc.*, 826 F.2d 983, 987 (11th Cir. 1987) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938)).

Whether Thompson's actions constitute "legal services" presents an issue of first impression under Alabama law. *Miss. Valley I*, 754 F.3d at 1334–35. As such, we certified the question to the Alabama Supreme Court. *Id.*; *see Nielsen*, 116 F.3d at 1413 ("Certification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism."). That court, however, declined to answer the question, and we are therefore tasked with considering this issue.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same legal standard as the district court and " 'construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party.' " *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005)). We will affirm a grant of summary judgment if the movant has shown, based on our review of the entire record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, a district court's interpretation and application of a statute of limitations presents a legal question that this Court reviews *de novo*. *United States v. Gilbert*, 136 F.3d 1451, 1453 (11th Cir. 1998).

7

## III.  DISCUSSION

## A.  THE CERTIFIED QUESTION

The critical question in this case is whether Thompson was providing legal services to Mississippi Valley when he carried out his duties as an attorney agent for the company.  The answer to this question determines which statute of limitations applies to Mississippi Valley's claims against Thompson.

If Thompson was providing legal services to Mississippi Valley, then the ALSLA's statute of limitations applies.  The applicable provision covers "[a]ll legal service liability actions against a legal service provider" and bars all suits arising more than four years after "the act or omission or failure giving rise to the claim" occurs.  Ala. Code § 6–5–574(a).

If Thompson was not providing legal services to Mississippi Valley, then the parties simply had a principal-agent relationship, and the statute of limitations governing this species of relationship applies. The applicable provision states that the limitations period "does not commence to run until the liability of the principal for the act or omission of such . . . agent is ascertained by an action of the party aggrieved against the principal." *Id.* § 6–2–6.  Thus, if Thompson was Mississippi Valley's agent, the company timely brought this suit: at the time Mississippi Valley filed its complaint, its liability to Wells Fargo had not yet been ascertained and it had paid nothing to Wells Fargo on its claim.

8

In general, Thompson qualifies as a legal service provider, as he is licensed to practice law by the State of Alabama. *Id.* § 6–5–572(2). An action against a legal service provider is not a "legal service liability action" unless it involves a claim "originating from [the] receipt of legal services." *Cunningham v. Langston, Frazer, Sweet & Freese, P.A.*, 727 So. 2d 800, 803 (Ala. 1999). Further, when the claims against an individual at least partially involve the provision of legal services, the ALSLA's statute of limitations subsumes the limitations period applicable to principal-agent indemnity actions. *Miss. Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 213 & n.4 (Ala. 1997) (citing Ala. Code § 6–5–572(1)).

We look to analogous Alabama Supreme Court decisions defining "legal service" in the title insurance context for guidance in resolving the present issue. In particular, the Alabama Supreme Court has issued opinions in three noteworthy cases. First, in *Land Title Insurance Co. of Alabama v. State ex rel. Porter*, 299 So. 2d 289, 295–96 (Ala. 1974), the court distinguished commitments for title insurance from formal title opinions. It held that non-attorney agents *are not* engaged in the unauthorized practice of law when they review title records and issue commitments for title insurance based thereon. *Id.* However, the court explained that rendering formal title opinions does constitute the practice of law, and non-attorney agents may not engage in this activity. *Id.* Next, in *Upton v. Mississippi Valley Title Insurance Co.*, 469 So. 2d 548, 556 (Ala. 1985), the court

9

affirmed *Land Title*'s distinction between commitments for title insurance and formal title opinions with regards to the unauthorized practice of law. Lastly, in *Hooper*, 707 So. 2d at 215–16, the court held that an approved attorney who performs a title search, renders a formal title opinion, issues a certificate of title, and subsequently issues a title insurance policy based on the attorney agent's own title opinion *is* engaged in the provision of legal services under the ALSLA. The court reached this conclusion because the attorney's legal and non-legal duties for Mississippi Valley could not be divorced from one another. *Id.* at 216. Thus, it remains unresolved under Alabama law whether Thompson's actions in this case—including his formation of unwritten opinions as to the insurability of title—amount to the provision of legal services.

That being said, Thompson's actions cannot be analyzed in a vacuum; whether Thompson was acting as a legal service provider under the ALSLA necessarily depends on whether Thompson and Mississippi Valley formed an attorney-client relationship. We turn to this issue next.

## B. THE NATURE OF THE PARTIES' RELATIONSHIP

As noted above, the ALSLA governs all suits against "legal service providers" arising from a breach of their duties in providing legal services. *Sessions v. Espy*, 854 So. 2d 515, 522 (Ala. 2002). "An attorney-client relationship is an essential element of a claim under the Legal Services Liability Act . . . ."

10

*Brackin v. Trimmier Law Firm*, 897 So. 2d 207, 209 (Ala. 2004). The parties in this case, therefore, must have formed an attorney-client relationship in order for Thompson to be considered a legal service provider. This, in turn, hinges on what Thompson was employed to do.[3]

"To create an attorney-client relationship, there must be an employment contract 'either express or implied' between an attorney and 'the party for whom he purports to act or someone authorized to represent such party.' " *Bryant v. Robledo*, 938 So. 2d 413, 418 (Ala. Civ. App. 2005) (quoting *Bd. of Comm'rs of the Ala. State Bar v. Jones*, 281 So. 2d 267, 273 (Ala. 1973)). In this context, the perception and intent of the putative client as to the formation of that contract is particularly relevant. *E.g.*, *Green v. Montgomery Cnty., Ala.*, 784 F. Supp. 841, 845–46 (M.D. Ala. 1992) ("[T]he test for determining the existence of [an attorney-client] relationship is a subjective one and 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.' " (quoting *Westinghouse Elec. Corp. v. Kerr-McGee*

---

[3] In Thompson's affidavit, he avers that his duties as an attorney agent required him to: "perform a title search, analyze the documents in the chain of title, draw conclusions from those documents, and formulate an opinion as to the status of title and how the documents in the chain of title affect record title to the property." D.C. Doc. 52–1 at 2.

Thompson's description of his work is illuminating and of importance, but it is also not determinative of the issue. If Mississippi Valley never contemplated that Thompson would provide legal services for the company, it does not matter that Thompson unilaterally undertook to provide or otherwise believes that he provided legal services for the company.

11

*Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978))).

Based upon our review of the record, we find that there exists a genuine dispute of material fact regarding what Mississippi Valley hired Thompson to do. Either an attorney-client relationship was formed or a principal-agent relationship was formed. This Court cannot say based on the record that either party has presented sufficient facts concerning the formation of the parties' contractual relationship such that summary judgment was appropriate in this case. Mississippi Valley claims that Thompson was hired strictly as a "title agent" and that his duties and responsibilities were limited to those a non-attorney agent could lawfully do. Thompson, in opposition, asserts that Mississippi Valley hired him as an "attorney agent" with the intent that he would provide legal services to the company.

Although the language of the documents governing the parties' relationship can help shed light on this question, they do not resolve this dispute. The "attorney agent" agreement entered into between the parties, as well as the "Agent's Manual" used by Mississippi Valley and its agents, both expressly contemplate the involvement of an attorney prior to the issuance of a title policy. Appellant's Brief at 6–7; D.C. Doc. 52–3 at 1; D.C. Doc. 52–4 at 1-2, 1-4. However, the Agent's Manual distinguishes "attorney agents" from "approved attorneys." Appellant's Brief at 7–8; D.C. Doc. 52–4 at 1-4. The Agent's Manual states that "[t]he Attorney Agent has been authorized by contract to issue the commitments and final

12

title policies of the company." D.C. Doc. 52–4 at 1-4. By contrast, the "approved attorney" is tasked with searching the public records and "prepar[ing] an opinion of title for the Company which accurately reflects the title picture of the property covered." *Id.* at 1-3. Only an approved attorney may issue a certificate of title, which certifies several details relating to the title of the parcel at issue. *Id.* at 1-2, 1-4. In the attorney agent agreement between Mississippi Valley and Thompson, it further states that "commitments and policies are issued only in accordance with and in compliance with the written opinion of any approved attorney." Thus, these documents seem to contemplate an attorney's involvement in certain steps of the title insurance process before the issuance of a policy.

The district court likewise reached this conclusion, holding that "since Thompson was an attorney, and since he was an 'attorney agent,' it can safely be assumed that the parties did intend an attorney to be involved prior to issuance of a title policy." D.C. Doc. 99 at 18. The court then held, however, that "the mere involvement of an attorney does not demonstrate that the attorney's actions represent the practice of law." *Id.* Mississippi Valley agrees with this conclusion, although it disagrees with the district court's assertion. In its brief, Mississippi Valley concedes that the attorney agent agreement and the Agent's Manual both contemplate an attorney's involvement in the title-issuing process, but the company states that it "has not enforced a 'written opinion' or 'certificate'

13

requirement in years, as in practice a 'title search' is sufficient, and Thompson was never designated as a certifying 'approved attorney.' Rather, he is a title agent." Appellee's Brief at 11.   Alabama law does not require an attorney—in his professional capacity—to be involved in the title insurance process, either.  *See* Alabama Title Insurance Act, Ala. Code §§ 27–25–1.1 to –10 (2001).  However, the Agent's Manual describes the steps of Mississippi Valley's title insurance process; step one explains that approved attorneys undertake public records (title) searches.  D.C. Doc. 52–4 at 1-2.  Thus, even though Mississippi Valley avers that it has not enforced a written opinion or certificate requirement in years because a title search is sufficient, its own Agent's Manual assigns title-search work to approved attorneys, not to attorney or non-attorney agents.  *See id.*

It is also worth noting Mississippi Valley's widespread usage of and reliance on attorney agents, when non-attorney agents are seemingly equally qualified to perform title searches and to issue commitments and insurance policies in Alabama.  Mississippi Valley states in its Agent's Manual that "[t]he majority of our title premiums are generated through our Attorney Agents.  The attorney agency system is the backbone of our company."  D.C. Doc. 52–4 at 1-4.  In addition, Thompson was required to provide detailed information about his legal education and the percentage of his law practice that involves real estate in his application to become an attorney agent.  D.C. Doc. 52–2.  It is plausible that a title

14

insurance company would seek to hire attorneys with experience in real estate because, in performing their duties for the company, the attorneys would presumably apply their legal expertise to the results of title searches before issuing commitments and insurance policies.  On the other hand, it is plausible that a title insurance company would seek to hire attorneys simply because it wanted to hire intelligent insurance agents, and attorneys presumably possess this intelligence.

It is undisputed that Thompson was hired as an attorney agent and not as an approved attorney.  Further, the facts indicate that no approved attorney checked Thompson's work or issued a title opinion or certificate of title.  So, what role was Thompson supposed to play?  The parties disagree over the answer to this question, and we are not satisfied that the facts in the record decisively lead to one conclusion over the other.

## IV.  CONCLUSION

We hold that there exists a genuine dispute of material fact regarding the contractual nature of the relationship between Thompson and Mississippi Valley.  Accordingly, summary judgment was inappropriate in this case.  The critical issue to be determined on remand is whether the parties entered into an attorney-client relationship, which in turn depends on what Thompson's intended employment duties were as understood by Mississippi Valley.

The judgment of the district court is REVERSED and REMANDED for

15

further proceedings consistent with this opinion.