[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10610
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00070-LGW-RSB

DEVIN B. STRICKLAND,

Plaintiff-Appellant,

versus

ARCH INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 9, 2018)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Devin Strickland appeals the district court's grant of summary judgment in

favor of Arch Insurance Company ("Arch") on Strickland's action to recover on a

payment bond issued by Arch. Specifically, the district court concluded that

Strickland's claims on the bond were time-barred. On appeal, Strickland argues that the district court erred in granting summary judgment on this basis. After careful review, we affirm.

The relevant, undisputed facts are these. Strickland provided sand to Douglas Asphalt Paving Company ("Douglas") for a Georgia Department of Transportation ("GDOT") road improvement project. The GDOT's 2001 Standard Specifications for the Construction of Transportation Systems were incorporated into Douglas's contract with GDOT. According to the Standard Specifications, the contractor was obligated to provide any repairs until GDOT issued written final acceptance. The contractor also had to furnish documentary proof of payment to material suppliers. Arch issued a payment bond on behalf of Douglas for the project in 2003. Arch agreed to pay all entities that supplied materials to Douglas. In 2007, Douglas was no longer authorized to work on the project because GDOT declared that the company was in default. In accordance with its performance bond obligations, Arch took over Douglas's work and arranged for completion of the project by a third-party contractor. Strickland did not supply sand after Douglas was removed from the project.

In August 2010, GDOT determined that the work on the project was substantially complete and ready for final inspection. In September 2010, the third-party contractor requested final inspection, and it was performed. The punch

2

list generated from the inspection -- listing work not yet conforming to the contract specifications -- was complete by September 2011.  In early 2012, Arch and its contractor requested that GDOT accept the road improvement project for maintenance.  In its request, Arch told GDOT that the project had been open to unrestricted traffic, all pay items were complete, and all punch-list work was complete.  In February 2012, a GDOT area engineer requested maintenance acceptance because the project had been satisfactorily completed.  In March 2012, GDOT accepted project maintenance responsibilities retroactive to September 2011.  Arch received semi-final payment in July 2012, which was subject to a review by an auditor.  GDOT did not pay any additional money on the project.

In September 2012, Strickland sent a demand letter on Arch's payment bond.  Arch acknowledged the claim and asked for additional documentation and a proof of claim.  Strickland did not respond to Arch's requests.  In 2014, Strickland learned that GDOT was preparing to close out the project.  A GDOT employee told Strickland that he needed to file any claims he had immediately, as GDOT would not close out a project if there was a pending lawsuit.  Strickland filed the instant action in August 2014.  Later that month, a GDOT employee stated in an e-mail that the road improvement project at issue had not yet received final acceptance and approval.  In September 2014, GDOT sent a letter of "final acceptance," which stated that the project had "been accepted" by GDOT as of

3

April 17, 2012. According to a GDOT representative, the paperwork and close out of the project took two years to complete; since September 2011, "final acceptance" of the project had been pending the acquisition of a materials certificate, which is GDOT paperwork stating that all materials used had been certified and approved.

On this undisputed record, the district court granted summary judgment in favor of Arch. It concluded that the one-year statute of limitations had run on Strickland's action because no genuine dispute of fact existed about the project being completed and accepted in September 2011. This timely appeal follows.

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court and construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011). We will affirm a grant of summary judgment if the movant has shown, based on our review of the entire record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court's interpretation and application of a statute of limitations presents a legal question that we review de novo. Mississippi Valley Title Ins. Co. v. Thompson, 802 F.3d 1248, 1252 (11th Cir. 2015).

We are unpersuaded by Strickland's argument that the district court erred in granting summary judgment on statute of limitations grounds.  In diversity actions, we apply the relevant state's statutes of limitations.  Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga., 720 F.2d 1230, 1232 (11th Cir. 1983).  Under Georgia law, "[n]o action can be instituted on the payment bonds or security deposits after one year from the completion of the contract and the acceptance of the public works construction by the proper public authorities."  O.C.G.A. § 13-10-65.  State law also determines when a diversity action commences for statute of limitations purposes.  See Walker v. Armco Steel Corp., 446 U.S. 740, 752-53 (1980).  When the Supreme Court of Georgia construed the former statute governing bonds for public contractors (which did not vary in any material way from the current statute) it held that the one-year statute of limitations period for filing suit on a payment bond "commences at the completion of the actual construction work and acceptance thereof by the public authority."  U.S.F. & G. Co. v. Rome Concrete Pipe Co., 353 S.E.2d 15, 16 (1987) (footnote omitted).

As applied here, Strickland's argument that the project was not "completed" until 2014 -- because the Standard Specifications provided that the contractor had work obligations of maintenance and repair until the issuance of written final acceptance -- lacks merit.  The Supreme Court of Georgia has recognized that "'[c]ompletion' . . . refers not only to total completion, but also to 'substantial

5

completion,' with only punch-list items remaining to be done." Id. at 16 n.1.  In Masonry Specialists of Ga., Inc. v. U.S. Fid. & Guar. Co., 616 S.E.2d 103, 105–06 (Ga. App. 2005), the Court of Appeals of Georgia noted that the project at issue was completed in August 2002, when only punch-list items remained, and the building was occupied and dedicated.  Thus, under Georgia law, this type of project is not considered incomplete simply because more work might be required. Georgia courts focus on "completion of the actual construction work."  Rome Concrete Pipe Co., 353 S.E.2d at 16.  Strickland did not provide evidence to contradict that the road project was substantially complete in August 2010, and the punch-list items were completed in September 2011, both of which occurred well over one year before this action was filed.

Nor are we convinced that a genuine dispute of material fact existed regarding when GDOT "accepted" the work as complete.  As we've said, the statute of limitations under Georgia begins running at "the completion of the contract and the acceptance of the public works construction by the proper public authorities."  O.C.G.A. § 13-10-65 (emphasis added).  Strickland argues that an e-mail from a GDOT employee showed that the road improvement project had not been accepted by the public authority in 2014. We disagree.  In an October 2014 e-mail, a GDOT employee indicated that the project had "not received final acceptance and approval."  (Emphasis added).  However, this evidence only shows

that GDOT had not sent written final acceptance at that point. GDOT's written final acceptance itself showed that the public authority "accepted" the project as of April 2012. And a GDOT employee's deposition testimony indicated that there was a two-year gap between acceptance and written final acceptance because GDOT had to complete paperwork and close out the project. Testing of the materials used was also required. Thus, the undisputed evidence showed that written final acceptance had not been issued based on GDOT's internal policy and procedure, and not because the actual construction work had not been accepted.

The case law is consistent with the language of the statute, which plainly triggers the limitations period at acceptance, and not final acceptance. So, for example, while Rome Concrete Pipe Co. only addresses "completion of the contract," its reasoning is instructive. 353 S.E.2d at 16. There, the plaintiff argued that completion under the statute was completion of the contract as determined by GDOT's internal procedures. Id. The state high court rejected that argument:

> The purpose of the statute in question is to limit the time during which the surety can be held liable for the obligor contractor's performance of the work or payment of its subcontractors and suppliers. Under the construction urged by Rome, . . . no matter when the general contractor completed the work and when it was accepted by the public authority, the contract would not be complete for purposes of the statute of limitation until the public authority determined it was complete with reference to its own internal policy and procedure. This construction would make it impossible to sue on a public work bond as long as the public authority contended the contract was not complete under its policy and procedures even where the work had been completed as far as the general contractor is concerned, and had

been accepted by the public authority. Such a construction is neither fair nor reasonable and is in conflict with the legislative intent underlying the statute.

Id. at 16–17. As with "completion," if "acceptance" turned on a public authority's internal policy and procedure, it would frustrate the purpose of the statute.

Moreover, in Masonry Specialists of Ga., Inc., the Court of Appeals of Georgia found that the statute of limitations began to run when the project was accepted, the project was complete save for punch-list items, and the building was occupied and dedicated, without reference to the public authority's internal procedure. 616 S.E.2d at 106. Here, the evidence presented by Strickland only demonstrated that GDOT had not completed its internal procedure and did not show that GDOT did not accept the actual construction work. Because the statute of limitations concerns acceptance of the actual construction work, and not GDOT's internal procedure, the August 2014 e-mail did not create a genuine factual dispute. Rather, the evidence showed that GDOT inspected, accepted for maintenance, and paid for the actual construction work between 2010 and 2012, more than one year before Strickland filed suit.

Strickland also claims that the project was not "accepted" more than one year before he filed suit because the Standard Specifications required maintenance and repair until GDOT issued written final acceptance, and final acceptance could not be given until GDOT certified the materials used. This argument parallels

8

Strickland's argument regarding "completion" of the project. However, Georgia courts have determined that projects were "complete" and "accepted" within the meaning of the statute where additional work, through a punch-list, could be required. Id. at 105–06. Further, this argument concerns GDOT's internal procedure and not acceptance of the actual construction work.

Finally, we are unpersuaded by Strickland's argument that the statute of limitations has not run because the bond at issue remains in "full force and effect" until all suppliers are paid by the contractor, and Strickland has not been paid. As Arch points out, this interpretation of the statute of limitations would render the statute meaningless because the limitations period would never begin where a supplier or subcontractor had not been paid. In addition, in Augusta Iron & Steel Works, Inc. v. U.S. Fid. & Guar. Co., 790 F.2d 852, 853 (11th Cir. 1986), a case cited with approval by the Georgia Supreme Court in Rome Concrete Pipe Co., 353 S.E.2d at 16, we rejected the argument that "completion of the contract" within the meaning of the former statute governing bonds for public contractors should be construed to include final payment for construction work. As we've noted, the statute of limitations begins to run "at the completion of the actual construction work and acceptance thereof by the public authority," Rome Concrete Pipe Co., 353 S.E.2d at 16, and not when the bond is no longer in effect.

In short, the district court did not err in determining that the statute of limitations had run on Strickland's bond claims.

**AFFIRMED.**